Hugh COLLINS, et al., Plaintiffs,

v.

INTERNATIONAL DAIRY QUEEN, INC.; and American Dairy Queen Corporation, Defendants.

No. 5:94–CV–95–4–MAC(WDO).

United States District Court, M.D. Georgia, Macon Division.

May 18, 1998.

William Camp Harris, John Elvis James, Lisa Neill–Beckmann, Macon, GA, Diane Green Smith, Lee Abrams, Chicago, IL, for Hugh Collins, Max Collins, Matt Mullis, Dairy Queen of Powder Springs, Inc.

William Camp Harris, John Elvis James, Lisa Neill–Beckmann, Macon, GA, Diane Green Smith, Chicago, IL, for T–Jazier, Inc., Dairy Queen and Brazier of Eastman, Inc.

Emmet J. Bondurant, II, Atlanta, GA, Benjamin M. Garland, F. Kennedy Hall, Macon, GA, William L. Killion, Quentin R. Wittrock, Troy A. Bader, Minneapolis, MN, for International Dairy Queen, Inc., American Dairy Queen Corp.

### *ORDER*

OWENS, District Judge.

Plaintiffs have filed a motion to send out additional class notices to Dairy Queen franchisees in this antitrust class action lawsuit. In response, defendants have filed a motion to stay the proceedings as to the categories of franchisees that are the subject of plaintiffs' motion. With their motion to stay defendants have filed an affidavit of Michael P. Sullivan, president and chief executive officer of International Dairy Queen, Inc., and American Dairy Queen Corporation. In conjunction with their response to defendants' motion to stay, plaintiffs have filed a motion to strike Mr. Sullivan's affidavit.

In its order of January 8, 1997, this court defined the three classes to be certified in this lawsuit, excluding from Class I and Class II those franchisees and territory operators whose agreements provide for mandatory arbitration of disputes with ADQ and/or IDQ. *See Collins v. International Dairy Queen, Inc.,* 169 F.R.D. 690 (M.D.Ga.1997). Defendants have omitted two categories of franchisees from the lists they provided to plaintiffs for purposes of notification of this lawsuit, which they contend are not included in the court's delineation of the certified classes. These categories are:

1. Franchisees and subfranchisees whose "Dairy Queen" soft serve dairy product business are governed by a form of franchise agreement known as the "Dairy Queen Store Agreement," which does not contain any arbitration provision but which was amended by a document governing the "Brazier" food service business ("the Brazier Amendment") which contains an arbitration provision.

2. Franchisees and subfranchisees whose franchise agreements contain arbitration provisions which plaintiffs contend are limited *only* to disputes regarding the franchisees' default and/or termination of the franchise agreement but not to disputes arising from defendants' wrongful conduct such as that alleged in plaintiffs' Fourth Amended Complaint.

Plaintiffs argue in their motion that defendants' unilateral omission of these franchisees and subfranchisees from the mailing lists was improper because the arbitration clauses contained in the agreements under which they operate do not encompass all disputes that may arise between the parties. We will discuss the arbitration clause in each of the disputed categories in turn.

## I. The Brazier Amendment

The Brazier Amendment is an amendment to the various forms of the Dairy Queen Store Agreement, which controlled the operation of the stores of certain franchisees and subfranchisees whose businesses were limited to soft serve ice cream and related products. Under the original Store Agreement the franchisees were given the right to:

Establish and operate a "Dairy Queen" store employing "Dairy Queen" merchandising methods and using the trademark "Dairy Queen" and said derivative trademarks on and in association with the advertising and sale of frozen dairy products, and the trade name "Dairy Queen" on the said store from which the product is sold.

The Store Agreement does not contain an arbitration clause. Instead, it provides that either party is entitled to an injunction, not to preclude a judgment for damages sustained, in the event of a breach or threatened breach. The Store Agreement also grants the Company the right to reasonable attorney's fees in the event the Company should find it necessary to institute legal proceedings of any kind. In addition, it provides that "in the event at any future time one or more clauses of this Agreement shall be held to be void by any court of competent jurisdiction for any reason, such clauses shall be deemed to be separable and the remainder of this Agreement shall be deemed to be valid and in full force and effect."

Franchisees operating under one or more forms of the Store Agreement who later elected to enter into the "Brazier" portion of the Dairy Queen food service business were required to execute a separate agreement known as the Brazier Amendment. The Brazier Amendment required an increased royalty fee payment on the sale of Brazier products and an increased sales promotion payment on all products sold by the franchisee. Paragraph 9 of the Amendment contains an arbitration clause which provides:

In the event of any dispute between the parties hereto arising under, out of, in connection with or in relation to this Agreement, said dispute shall be submitted by the parties hereto to arbitration in accordance with the Rules and Procedures and under the Auspices of the American Arbitration Association.... The decision of the arbitrators shall be final and binding on all parties.... [I]t is mutually agreed that in the event of a breach or threatened breach of any of the terms of this operating Agreement by Licensee, Company shall forthwith be entitled to an injunction restraining such breach and/or to a decree of specific performance, without showing or proving any actual damage, until such time as a final and binding determination is made by the arbitrators. The foregoing equitable remedy shall be in addition to, and not in lieu of, all other remedies or rights which Company might otherwise have by virtue of any breach of this Agreement by Licensee.

Plaintiffs contend that this arbitration clause by its terms applies only to the Brazier portion of the business, while the soft serve ice

cream business continues to be governed by the terms of Store Agreement.

Two paragraphs of the Brazier Amendment in particular are relevant to a determination of the parties' intent as to the relationship between the two documents and the scope of the arbitration clause. First, Paragraph 1.1 of the Brazier Amendment states:

> This Amendment shall be attached to, made a part of and wholly merged into that certain "Dairy Queen" Franchise and/or License Agreement .... Said Franchise and/or License Agreement, supplemented by this Amendment, is to remain in full force and effect and is to be deemed superseded by this Amendment only to the extent necessary to implement the terms hereof. In all other cases and for all purposes said Franchise and/or License Agreement and this Amendment shall be construed and treated as a single instrument and, to the extent that they are not inconsistent herewith, all the terms and provisions hereinafter contained shall be defined and interpreted in conjunction with all of the terms and provisions of said Franchise and/or License Agreement.

Secondly, Paragraph 11 of the Amendment states:

> The relationship between the parties hereto with regard to all matters not specifically treated by this Amendment, shall be controlled by the terms of the Franchise and/or License Agreement to which this Amendment is attached and made a part, and the terms, conditions, requirements and provisions of said Agreement shall govern the implementation and operation of this Amendment *to the extent that the same are not superseded by or inconsistent with the terms of this Amendment,* provided, however, that pursuant to the definition of the "Brazier" Trademarks, trade names and service marks hereinbefore set out, the terms and provisions of this Amendment shall control all aspects of the operation of Licensee's retail store other than that portion of his store operation exclusively concerned with soft serve, soft serve novelties and soft drinks to the extent that the latter three classes are controlled by Licensee's original Franchise

and/or License Agreement with Company or its predecessors in interest. [Emphasis supplied.]

Plaintiffs argue in their motion before this court that the franchisees who signed the Brazier amendment never agreed to arbitrate claims relating to their soft serve ice cream businesses. They also contend that the parties' retention of the right to litigate disputes pertaining to the soft serve business is not inconsistent with the requirement to arbitrate disputes related to the Brazier business. If plaintiffs' interpretation is the correct one and the arbitration clause relates only to disputes involving the Brazier business, then franchisees and subfranchisees operating under the Brazier Amendment would be entitled to participate in this class action to the extent that it relates to the soft serve portion of the business. However, defendants maintain that the requirement to arbitrate is inconsistent with the rights conferred by the Store Agreement and that the Store Agreement is consequently superseded by the terms of Paragraph 11 of the Brazier Amendment.

 This court has previously discussed the strong federal policy favoring arbitration and the requirement that resolution of any doubt about the application of an arbitration clause be resolved in favor of arbitration. See, e.g., *Collins v. International Dairy Queen,* 990 F.Supp. 1469 (M.D.Ga.1998), citing *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409(1960); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983); *Gregory v. Electro–Mechanical Corp.,* 83 F.3d 382, 385 (11th Cir.1996). The purpose of the federal policy is to enforce arbitration clauses that the parties entered into by contract. To defendants the issue is simply whether the scope of the arbitration clause set forth in the Brazier Amendment is broad enough to include the soft serve ice cream portion of the Dairy Queen business. However, it is an equally valid principle that parties may not be required to arbitrate when they have not agreed to do so. *United Steelworkers; Wheat First Securities, Inc. v. Green,* 993

F.2d 814, 817 (11th Cir.1993). Emphasizing this principle, plaintiffs contend that the parties never agreed to arbitrate claims relating to their soft serve ice cream businesses and that defendants' arguments as to the scope of the arbitration clause have missed the point. There is no question in the court's view that the parties to the Store Agreement did enter into an agreement to arbitrate when they signed the Brazier Amendment. The issue to be resolved, then, is whether the scope of the arbitration clause in the Amendment should be limited to the Brazier portion of the business or whether its scope also extends to matters relating to the soft serve ice cream business.

■■■■ The federal policy favoring arbitration requires that any questions about the scope of arbitrable issues be resolved in favor of arbitration "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone,* 460 U.S. at 24–25. The Supreme Court discussed this principle in *First Options of Chicago v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Quoting *Moses H. Cone* and *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), the Court reiterated the principle that although a court should normally apply ordinary state law principles governing the formation of contracts in determining whether the parties agreed to arbitrate a certain matter, the presumption is in favor of arbitrability with respect to the question whether a particular issue is within the scope of a valid arbitration agreement.[1] *First Options,* 514 U.S. at 945, 115 S.Ct. 1920. The reasoning behind this presumption is that where a contract provides for arbitration of some issues, and given the law's presumption in favor of arbitration, it may be presumed that the parties likely gave some thought to the scope of the arbitration clause. *Id.* Accordingly,

plaintiffs in the present case must produce convincing evidence that the parties intended to exclude the soft serve ice cream portions of their businesses from the reach of the arbitration clause in the Brazier Amendment. *See, e.g., AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986); *First Options,* 514 U.S. at 945, 115 S.Ct. 1920.

Plaintiffs argue that throughout the Amendment, in situations where new terms are imposed on the franchisees, language is used to specifically identify each of the terms of the Store Agreement that it intends to supersede. For example, in increasing the amount of the sales promotion fee payable by the franchisees, the Amendment specifically indicates that "the sales promotion fee herein provided for shall supersede and replace any sales promotion or advertising fees required to be paid by Licensee to Company under any such earlier franchise or license agreement." Another example is provided in Paragraph 8.4 of the Amendment, which states that a "default by Licensee in the timely payment of any indebtedness owing to company ... shall constitute a breach of this and of Licensee's Amended Franchise and/or License Agreement...." On the other hand, the Amendment in certain instances refers to "Licensee's Amended Franchise and/or License Agreement" where particular provisions of the Amendment are intended to apply to both the Store Agreement and the Amendment. Plaintiffs submit that had the parties intended for the arbitration clause to apply to the Store Agreement, the arbitration clause would have been made applicable to disputes arising under "Licensee's Amended Franchise and/or License Agreement" rather than to disputes arising under the "Agreement."

However, in view of the fact that several paragraphs of the Brazier Amendment refer only to "the Amendment," rather than "the Agreement," an equally valid argument can

---

1. *First Options* is not directly on point with respect to the present case, as it involved the question of whether the parties therein had agreed to arbitrate the question of arbitrability. The Supreme Court held that courts should not assume that the parties agreed to arbitrate arbitrability without "clea[r] and unmistabl[e]" evidence

that they did so. 514 U.S. at 944, 115 S.Ct. 1920. However, as to the question of whether a particular merits-related dispute falls within the scope of a valid arbitration agreement, the Court emphasized that the law reverses the presumption in favor of arbitrability.

be made that had the parties intended for the scope of the arbitration clause to be limited to the Brazier business they would have referred to disputes arising out of "the Amendment" rather than "the Agreement." Inasmuch as the Brazier Amendment was for the purpose of adding a new line of products to the existing business, it is understandable that the parties found it useful to refer to the separate components of the new agreement—i.e., the Store Agreement and the Brazier Amendment—when addressing topics primarily relevant to one or the other. The lack of precision by the drafters in the terms used to refer to the Store Agreement, the Brazier Amendment, and the final merged document is not in itself determinative of the intended scope of the arbitration clause particularly, as in this case, where the terminology used is inconsistent.

Paragraph 1.1 of the Brazier Amendment specifically states that the Store Agreement and the Amendment are to be merged and considered as one instrument in the event of inconsistency, in which case the terms of the Brazier Amendment are to prevail. Consistent with those terms, Paragraph 11 reiterates that the terms of the Store Agreement are to remain in effect unless they are superseded by or inconsistent with the Amendment, in which case the Amendment will control. Nevertheless, Paragraph 11 specifically provides that the Amendment will not control the operation of the business exclusively concerned with soft serve ice cream, soft serve novelties, and soft drinks to the extent that those three classes are controlled by the Store Agreement. No reference or exception is made in Paragraph 11 to the competing provisions in the two documents referring to the parties' rights to institute legal proceedings and/or to arbitrate.

A franchisee's retention of the right to operate the soft serve portion of his business in accordance with his existing Store Agreement is not the equivalent of retaining the right to litigate controversies with defendants pursuant to such Agreement. Having specifically excluded the operation of the soft serve business from the control of the Brazier Amendment, the parties could have specified that the portion of the Store Agreement

conferring the right to obtain an injunction or to litigate was to remain in effect if that was their intention. The failure to do so creates at best an ambiguity when read with the provisions of Paragraphs 1.1 and 11, which clearly provide that where the Store Agreement and the Brazier Amendment are inconsistent the Amendment is to prevail.

Plaintiffs have cited authority for the standard rule of contract construction which dictates that contracts are to be construed against the drafter. *See Citro Florida, Inc. v. Citrovale, S.A.,* 760 F.2d 1231 (11th Cir. 1985); *Current Technology Concepts, Inc. v. Irie Enterprises, Inc.,* 530 N.W.2d 539, 543 (Minn.1995). However, this general principle relating to contracts is superseded by the federal policy which requires that construction of contract language is to be resolved in favor of arbitration where there are doubts as to the parties' intentions. *Moses H. Cone,* 460 U.S. at 24–25, 105 S.Ct. 3346. In the court's view, the parties' agreement to submit all matters to arbitration is inconsistent with retention of the right to institute legal proceedings. As previously stated, had the parties intended to retain the right to file a lawsuit as to controversies concerning the soft serve portion of the business while requiring arbitration for the Brazier business, the federal policy in favor of arbitration would provide a compelling reason for them to specifically so provide. The Amendment contains no express provision retaining the right to litigate as to the soft serve business or specifically excluding the soft serve business from the reach of the arbitration clause, and the language of Paragraphs 1.1 and 11 are evidence of a contrary intention.

Given the ambiguity as to the intended scope of the arbitration clause, as well as the lack of clear and unmistakable evidence to overcome such ambiguity, the federal presumption in favor of arbitrability mandates that the arbitration clause in Paragraph 9 of the Brazier Amendment be interpreted to apply to the soft serve ice cream portion of the Dairy Queen business. Thus, the franchisees subject to the agreement consisting of the Dairy Queen Store Agreement as modified by the Brazier Amendment are required

to arbitrate their claims against the defendants.

## II. *The DQ 1001 Operating Agreement*

█ Defendants have failed to produce to plaintiff the names of those franchisees who operate under franchise agreements containing what plaintiffs characterize as limited arbitration provisions related to default or termination. The DQ 1001 Operating Agreement contains the following version of such an arbitration clause:

### DEFAULT AND TERMINATION

12. The following provisions shall apply with respect to default and termination: A. *Remedies, Arbitration.* Except as qualified below, any dispute between the parties hereto arising under, out of, in connection with or in relation to this Agreement or any lease or sublease for the Store or Authorized Location shall be submitted to binding arbitration.... The decision of the arbitrators shall be final and binding on all parties; however, the arbitrators may not under any circumstances: (i) stay the effectiveness of any pending termination of this agreement; (ii) assess punitive or exemplary damages; or (iii) make any award which extends, modifies or suspends any lawful term of this Agreement or any reasonable standard of business performance set by Company ...[I]n the event of a breach or threatened breach of any of the terms of this Agreement by Licensee, Company shall forthwith be entitled to an injunction restraining such breach ... until such time as a final and binding determination is made by the arbitrators. The foregoing equitable remedy shall be in addition and not in lieu of, all other remedies or rights which Company might otherwise have by virtue of any breach of this Agreement by Licensee. Company also reserves the right to commence a civil action against Licensee or take other appropriate action for the following reasons: to collect sums of money due to Company; to compel Licensee's compliance with trademark standards and requirements to protect the goodwill of the Trademarks; to compel Licensee to compile and submit required reports to Company; or to permit evaluations or audits authorized by this Agreement. The prevailing party in any action or proceeding to enforce the terms and provisions of this Agreement shall be. entitled to recover its reasonable attorneys' fees and costs.

Paragraph 12A is followed by numbered paragraphs 12B, 12C, 12D, and 12E which refer to defaults, termination by the company, failure to open or relocate, and termination by the licensee.

Paragraph 14E of the 1001 Agreement provides that "Headings and captions contained herein are for convenience of reference and shall not be taken into account in construing this Agreement." Thus, the "Default and Termination" heading must be construed as having no bearing on interpretation of the arbitration provision. However, the succeeding sentence, "The following provisions shall apply with respect to default and termination," appears to support plaintiffs' arguments in favor of a limited interpretation of the arbitration provision. This language is not properly speaking a heading but rather an introductory sentence. It may therefore be taken into account insofar as it is relevant in resolving the issue before the court.

Plaintiffs contend that by its terms Paragraph 12A requires arbitration only in the event of a dispute arising from a franchisee's default or termination, and that no franchisee or subfranchisee who is subject to Paragraph 12A agreed to arbitrate any issues involving defendants' performance of obligations. Even if we otherwise accept plaintiffs' view that the parties intended to limit arbitrable disputes to matters of default and termination, we cannot easily accept the argument that the arbitration clause does not cover disputes involving defendants' default. The language requiring binding arbitration of "any dispute between the parties hereto" is sufficient to encompass issues involving defendants' obligations under paragraphs 12A, B, C, D, and E with respect to default and

termination even if not to other issues.[2]

Notwithstanding the prefatory reference "with respect to default and termination," the arbitration clause contains general language making arbitrable "any dispute between the parties hereto arising under, out of, in connection with or in relation to this Agreement or any lease or sublease" except as qualified by additional language in Paragraph 12A. The requirement to arbitrate is qualified in two ways. First, the powers of the arbitrators are limited to prevent them from staying a pending termination of the Agreement, from assessing punitive or exemplary damages, or from extending, modifying or suspending the term of the Agreement or any reasonable standard of business performance. Defendants retain the right to seek an injunction pending a final decision by the arbitrators. Second, defendants reserve to themselves the right to litigate in specified instances, i.e., to collect sums of money or to compel Licensee's compliance with trademark standards and requirements, and so forth. The remaining subsections of Paragraph 12 define what is to constitute default by the franchisee and also address rights of termination by both the company and the licensee.

Defendants submit that the "with respect to default and termination" language simply reinforces the applicability of the arbitration provision to situations involving default and termination while in no way limiting its applicability to other circumstances. The ambiguous character of Paragraph 12A suggests another possible interpretation: that the "with respect to default and termination" language refers to the limitations imposed on the arbitrators' rights and the reservation of additional rights to defendants insofar as issues of default and termination are concerned, while the broad language requiring arbitration of "any dispute between the parties hereto" indicates an intention to require

arbitration of any remaining issues not otherwise limited or addressed.

Plaintiffs draw our attention to Paragraph 14H of the 1001 Agreement as support for their position that the arbitration clause does not apply to matters addressed in their complaint. Under the heading of "General Provisions," Paragraph 14H provides:

> Any cause of action, claim, suit or demand allegedly arising from or related to the terms of this Agreement or the relationship of the parties that is not subject to arbitration under Paragraph 12 hereof, shall be brought in the Federal District Court for the District of Minnesota or in Hennepin County District Court, Fourth Judicial District, Minneapolis, Minnesota. Both parties hereto irrevocably admit themselves to, and consent to, the jurisdiction of said courts.

The claim is made that this language provides convincing evidence against arbitrability as to the claims asserted in their complaint because Paragraph 14H would be redundant and meaningless if the arbitration provision in Paragraph 12A applied to matters not involving default and termination. However, Paragraph 14H may be reasonably interpreted as providing a forum for litigation of those matters which Paragraph 12A specifically reserves to defendants the right to litigate—such as collecting sums of money or compelling a franchisee's compliance with trademark standards and requirements—rather than providing such a forum for all controversies not fitting the definitions of default or termination. In any case, defendants convincingly assert that even if this court were to rule in favor of plaintiffs concerning the scope of the arbitration clause it would not help plaintiffs' position in the present lawsuit because the franchisees operating under the 1001 Agreement have obligated themselves to litigate any nonarbitratable claims in Minnesota.

---

**2.** Defendants argue that the franchisees' claims would in any case constitute default, since plaintiffs' primary allegation in their Fourth Amended Complaint is that defendants defaulted upon their contractual obligations related to the availability and approval of alternative products and sources of products in the Dairy Queen system,

and that plaintiffs' other causes of action "arise in connection with or in relation to" defendants' purported contractual defaults. In resolving the question as to arbitrability the court has not focused on whether all the allegations in the complaint fit within the definition of default.

The introductory sentence "The following provisions shall apply with respect to default and termination," clearly creates an ambiguity when read in conjunction with the broad language of Paragraph 12A requiring that "any dispute between the parties hereto ... shall be submitted to binding arbitration." Plaintiffs make reference to general principles of contract interpretation for purposes of resolving the ambiguity and espousing their interpretation as to the limited scope of arbitrability. However, given the strong federal presumption in favor of arbitrability of particular issues where the parties made an agreement to arbitrate, our conclusion must be based on that principle unless plaintiffs' evidence clearly and unmistakably overcomes the presumption. Although the question is close, we are constrained to hold that plaintiffs have not succeeded in establishing by forceful evidence that the parties did not intend that claims such as those asserted in the Fourth Amended Complaint were to be included within the scope of the arbitration clause.

In reaching its conclusion with respect to plaintiffs' motion to send out additional class notices and defendants' corresponding motion to stay, the court has not found it necessary to rely upon the matters contained in the affidavit of Michael P. Sullivan. Consequently, plaintiffs' motion to strike Mr. Sullivan's affidavit will be denied.

### III. Conclusion

In conclusion, for the reasons stated hereinabove:

(1) Plaintiffs' motion to send out additional class notices is **DENIED;**

(2) Plaintiffs' motion to strike the affidavit of Michael P. Sullivan is **DENIED;** and

(3) Defendants' motion to stay the proceedings is **GRANTED** as to those franchisees and subfranchisees operating under the arbitration clauses discussed hereinabove.