**Fred PERLSTEIN, Appellant,**

v.

**D. STELLER 3, LTD., Appellee.**

No. 13–02–180–CV.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

May 15, 2003.

Rehearing Overruled July 17, 2003.

Tom Fleming, Fleming & Hernandez, Brownsville, for appellant.

William A. Faulk, Jr., Rentfro, Faulk & Blakemore, L.L.P., Brownsville, for appellee.

Before Justices HINOJOSA, CASTILLO, and CHAVEZ.[1]

## OPINION

Opinion by Justice CHAVEZ (Retired).

In this interlocutory appeal, appellant, Fred Perlstein ("Perlstein"), appeals the trial court's denial of his motion to abate and compel arbitration.[2]

D. Steller 3, Ltd. ("Steller"), a Texas limited partnership, purchased a general partnership interest in a limited partnership from Perlstein. At closing, the limited partnership was restructured in accordance with the agreement of the parties, and an Amended and Restated Agreement of Limited Partnership ("the Amended Agreement") was executed. The Amended Agreement contained the terms and provisions for the operation of an apartment complex that the limited partnership owned. Included in the Amended Agreement was an arbitration agreement. Steller later sued Perlstein, alleging Perlstein made false representations that induced Steller to purchase the general partnership. Perlstein moved the court to abate the suit and order Steller to arbitrate the dispute as required by the Amended Agreement. The trial court denied the motion, and this appeal followed. Because we hold that the arbitration paragraph does not apply to the dispute in question, we affirm the trial court's order denying arbitration.

Following a letter of intent ("the Letter Agreement") to purchase the general partnership interest, Steller and Perlstein entered into a Purchase Agreement on May 27, 2000 that set out the terms and conditions of the transaction. The Purchase Agreement contained the following remedies provision:

> 21. *Remedies.* In the event that any of the PERLSTEIN's representations or warranties contained herein are untrue or if PERLSTEIN shall have failed to have performed any of the covenants and/or agreements contained herein which are to be performed by PERLSTEIN, BUYER may, at its option, either (a) terminate this Agreement by giving written notice of termination to PERLSTEIN and receive a full and immediate refund of any and all Earnest Money previously deposited; or (b) sue PERLSTEIN for damages suffered by BUYER; or (c) BUYER may seek to enforce specific performance of this Agreement.

Paragraph 3.2 of the Purchase Agreement provided that there would be a restructuring of the limited partnership in an

---

**1.** Retired Justice Melchor Chavez, assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 75.002 (Vernon 1998).

**2.** The Texas Arbitration Act ("TAA") provides for interlocutory appeal of an order denying a motion to compel arbitration under the TAA. *See* Tex. Civ. Prac. & Rem.Code Ann. § 171.098(a)(1) (Vernon Supp.2003); *Certain*

*Underwriters at Lloyd's of London v. Celebrity, Inc.,* 988 S.W.2d 731, 732 (Tex.1998). Here, appellant asserts this Court has jurisdiction to hear this interlocutory appeal under the TAA, and appellee does not challenge this Court's jurisdiction. Moreover, the record contains no evidence that the arbitration agreement at issue implicates the Federal Arbitration Act.

Amended and Restated Partnership Agreement and that the Purchase Agreement would be incorporated into the said Amended and Restated Partnership Agreement.

The sale was closed on December 28, 2000, when Steller signed the Amended Agreement with an effective date of January 1, 2001. The Amended Agreement contained an "Entire Agreement" clause that reads as follows.

> 17.02 *Entire Agreement.* This Agreement, the Letter Agreement and the Purchase Agreement dated May 27, 2000 between Perlstein and the General Partner (Steller), represent the entire and complete agreement of the Partners with respect to the subject matter hereof, and supersede all prior understandings and agreements, both written and oral, as to the subject matter hereof by and among any of the Partners hereto.

The Amended Agreement also contained the following arbitration paragraph:

> 16.01 *Arbitration Generally.* Any controversy, claim or dispute between or among the parties directly or indirectly concerning this Agreement or the breach thereof or the subject matter hereof, including questions concerning the scope and applicability of this Article XVI, shall be finally settled by arbitration held in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA"), as amended from time to time. The arbitrators shall have the right and authority to determine how their decision or determination as to each issue or matter in dispute may be implemented or enforced. Any decision or award of the arbitrators shall be final, binding and conclusive on the parties to this Agreement and there shall be no appeal therefrom other than for gross negligence or willful misconduct.

After Steller filed his fraudulent inducement lawsuit, Perlstein moved the court to abate the case and compel arbitration. Perlstein contended that all three agreements had been merged into one final and complete agreement, thus making all disputes subject to arbitration. Even if Steller disputed the applicability of the arbitration clause, argued Perlstein, that dispute was also subject to arbitration. Steller, on the other hand, disputes that a merger had occurred and argues that the fraudulent inducement claim was specifically reserved in the "remedies" clause contained in the Purchase Agreement.

Accordingly, we must decide whether the Amended Agreement merged all three agreements into one final agreement rendering the arbitration agreement applicable to this dispute, and if so, whether the remedies clause in the Purchase Agreement created an exception to arbitrate such a claim. We must also determine whether the dispute regarding the scope and applicability of the arbitration paragraph is itself subject to arbitration.

Historically, Texas law has favored settling disputes by arbitration. *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 90 (Tex.1996). Arbitration is a creature of contract; thus, when a party seeks to compel arbitration, he must first establish his right to that remedy under contract. *City of Alamo v. Garcia,* 878 S.W.2d 664, 665 (Tex.App.-Corpus Christi 1994, no writ). In Texas, courts favor arbitration agreements, and any doubts regarding the scope of an arbitration agreement are resolved in favor of arbitration. *Koch v. Koch,* 27 S.W.3d 93, 96 (Tex.App.-San Antonio 2000, no pet.). Once the existence of an arbitration agreement has been shown, the party resisting arbitration bears the burden of proving that the dispute at issue falls outside of the arbitration agreement. *Pru-*

*dential Sec., Inc. v. Marshall,* 909 S.W.2d 896, 900 (Tex.1995). The policy favoring enforcement of arbitration provisions is so compelling that a court should not deny arbitration "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Id.* at 899.

In his second issue, Perlstein argues that Steller presented no evidence that the dispute is not governed by the arbitration provisions of the Amended Agreement. We review a trial court's determination concerning the existence of an arbitration agreement under an abuse of discretion standard. *Southwest Tex. Pathology Assocs., L.L.P. v. Roosth,* 27 S.W.3d 204, 207 (Tex.App.-San Antonio 2000, pet. denied); *ANCO Ins. Servs. of Houston, Inc. v. Romero,* 27 S.W.3d 1, 3 (Tex.App.-San Antonio 2000, pet. denied). Under this standard, we must uphold the trial court's decision unless we conclude that the trial court could reasonably have reached only one decision. *Roosth,* 27 S.W.3d at 207. Where, as here, the trial court does not enter findings of facts and conclusions of law, we must affirm the trial court's decision if there is sufficient evidence to support it upon any legal theory asserted. *Pepe Internat'l Dev. Co. v. Pub Brewing Co.,* 915 S.W.2d 925, 929 (Tex. App.-Houston [1st Dist.] 1996, no writ). Even if we would have decided the issue differently, we cannot disturb the trial court's finding unless it is shown to be arbitrary and unreasonable. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). Legal conclusions, however, are reviewed *de novo. Id; Pony Express Courier Corp. v. Morris,* 921 S.W.2d 817, 820 (Tex.App.-San Antonio 1996, no writ). Whether an agreement imposes a duty on the parties to arbitrate a dispute is a matter of contract interpretation and a question of law

for the court. *Tenet Healthcare Ltd. v. Cooper,* 960 S.W.2d 386, 388 (Tex.App.-Houston [14th Dist.] 1998, writ dism'd w.o.j.).

The record before the trial court shows that three agreements were entered into separately over a period of time. The two agreements that concern us are the Purchase Agreement and the Amended Agreement. Each contains different "entire agreement" clauses, one an arbitration agreement, and the other a remedies clause. The dispute centers on whether the Amended Agreement merged all the agreements into one, rendering the arbitration clause applicable to the dispute in question. Therefore, we first look at the entire agreement clauses in the respective agreements.

Perlstein bases his merger argument on paragraph 17.02 of the Amended Agreement. Nowhere in that paragraph, however, have we been able to find the word "merged." The Purchase Agreement, on the other hand, also contains an "Entire Agreement" paragraph. That paragraph reads as follows:

18. Entire Agreement of Parties/Interpretation. This Agreement constitutes the entire contract between the parties hereto. Any prior written or oral agreements or letters of intent shall be considered *merged* in this Agreement and shall be of no further force or effect. (Emphasis added).

First, we note that the agreement is described as the "entire contract between the *parties* hereto," while paragraph 17.02 refers to the three agreements as representing the "entire and complete agreement of the Partners ..." (emphasis added). Separation of the transactions was necessary because the purchase of the general partnership interest was a transaction involving only two parties, Steller and Perlstein, whereas the restructuring of the

limited partnership involved Steller, Perlstein, and the other partners.

Secondly, paragraph 17.02 provides that "This Agreement, the Letter–Agreement and the Purchase Agreement ... represent the entire and complete agreement of the Partners...." We read this clause as meaning that the three agreements, taken together, form the complete agreement of the parties. The Letter Agreement and the Purchase Agreement were made a part of the entire and complete agreement of the partners because in those agreements, Steller was to become the general partner, and agreed to make certain improvements to the property and to the restructuring of the limited partnership that involved the remaining partners. It is apparent, however, that some separation of the agreements was intended because the parties chose to insert the word "merged" when referring to various documents in the "entire agreement" clause of the document that involved only those parties, and chose not to include the term in the other agreement that involved other partners. Had the parties wanted to merge the Letter Agreement and the Purchase Agreement with the Amended Agreement, they could have easily said so. They did not. We also read paragraph 17.02 as stating that all three agreements taken together *supersede* all prior understandings and agreements, not that "[t]his agreement" *supersedes* all prior understandings and agreements. Paragraph 17.02 also lists each of the agreements by name, referring to the Amended Agreement as "this Agreement." The arbitration paragraph also refers only to "this Agreement" and does not mention the other two agreements.

▇▇▇▇ Perlstein also relies on the "merger doctrine" in his argument that a merger of all agreements occurred when the Amended Agreement was executed. Merger, however, refers to the extinguishment of one contract by its absorption into another contract and is largely a matter of the intention of the parties. *Pitman v. Lightfoot*, 937 S.W.2d 496, 529 (Tex.App.-San Antonio 1996, writ denied). Whether merger has occurred, or whether an agreement is merely a non-conflicting addition to a written contract, is determined from the intent of the parties. *Id.* Here, the parties clearly had no intention to extinguish any of the agreements. Rather, the parties clearly expressed that all three agreements collectively formed the entire agreement of the parties. We conclude, therefore, that paragraph 17.02 of the Amended Agreement did not merge all three of the agreements.

▇▇▇▇ We have reviewed Steller's pleadings in the underlying lawsuit against Perlstein and find that the factual allegations state a cause of action solely for fraudulent inducement in the sale of the partnership interest. Normally, fraud in the inducement of an arbitration agreement is a defense to arbitration, but alleged misrepresentations in the inducement of the underlying contract relate to the contract's validity and can be arbitrated. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 755 (Tex.2001). In interpreting Colorado law recently, the Supreme Court held that whether a contract was induced by fraud is a dispute involving the agreement and could be arbitrable. *In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 551 (Tex.2002) (orig.proceeding).

*Edwards* however, involved only one contract with an arbitration agreement that required all disputes involving the contract to be arbitrated. *Id.* at 548. Here, the parties had separate, specific agreements for each segment of the transaction: (1) a letter of intent to purchase the general partnership; (2) the actual

purchase of the general partnership; and (3) the Amended Agreement, which restructured the limited partnership by naming Steller as the general partner and provided for the operation of the property the limited partnership owned. Each agreement separately provided a manner in which to settle disputes: by arbitration in the Amended Agreement and through a remedies clause specifically for only one eventuality in the Purchase Agreement. Although this eventuality is not listed in the exceptions clause of the arbitration agreement, it need not be because the agreements were not merged and the remedies clause is restrictive and clearly identifies the sole issue that the parties wanted it to encompass.

■ Even if the agreements were merged, that would only mean they were merged or incorporated in their entirety, including the remedies clause to encompass only one type of dispute, and an arbitration clause to encompass all other disputes. In effect, the remedies clause would be an exception to arbitration. The entire agreement clause, paragraph 17.02, contains no language that would extinguish any of the agreements or supremacy provisions in the event of a conflict. We hold, therefore, that the parties clearly intended to exclude the fraudulent inducement claim from the arbitration agreement. Because we hold that the arbitration agreement does not encompass the dispute in question, neither does it encompass the right to arbitrate the question concerning its scope and applicability in this instance. The duty to arbitrate scope and applicability encompasses all disputes, except the fraudulent inducement claims described in the Purchase Agreement.

We overrule appellant's issues and AFFIRM the order of the trial court.

1. Retired Justice Melchor Chavez, assigned to this Court by the Chief Justice of the Texas

Dissenting Opinion by Justice CASTILLO.

Before Justices HINOJOSA, CASTILLO, and CHAVEZ.[1]

## DISSENTING OPINION

I respectfully dissent. The majority: (1) does not correctly apply the appropriate standard of review to the question of what issues are included within the scope of the parties' arbitration agreement; (2) does not identify the burdens of proof associated with determining the scope of the parties' arbitration agreement; and (3) as a result, fails to give effect to presumptions favoring arbitration.

## I. The Arbitration Clause

The Amended Agreement entered into by Perlstein and Steller included the following arbitration agreement:

## ARTICLE XVI

## ARBITRATION

16.01. *Arbitration Generally.* Any controversy, claim or dispute between or among the parties *directly or indirectly* concerning this Agreement or the breach thereof or the subject matter hereof, *including questions concerning the scope and applicability of this Article XVI,* shall be finally settled by arbitration....

16.02. *Exception to Arbitration.* Notwithstanding the foregoing, nothing contained herein shall require arbitration of any issue arising under this Agreement for which injunctive relief is successfully sought by the Partnership or any party hereto.

Supreme Court pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1998).

(Emphasis added.) In determining whether this clause compels arbitration, the trial court was required to decide two issues: (1) whether a valid, enforceable arbitration agreement exists; and (2) if so, whether the asserted claim falls within the scope of the agreement. *Dallas Cardiology Assocs., P.A. v. Mallick,* 978 S.W.2d 209, 212 (Tex.App.-Texarkana 1998, pet. denied); *Nationwide of Bryan, Inc. v. Dyer,* 969 S.W.2d 518, 520 (Tex.App.-Austin 1998, no pet.).

Whether Perlstein and Steller have agreed to arbitrate is not the question before us; they have. Rather, Perlstein presents two issues regarding the scope of the parties' arbitration agreement: (1) whether *the question of the arbitrability* of Steller's claim of fraudulent inducement to enter into the Partnership Agreement is itself subject to arbitration; and (2) whether Steller's claim of fraudulent inducement is subject to arbitration *on the merits.*

## II. THE STANDARD OF REVIEW

Texas law long has followed a public policy, originally developed in federal jurisprudence, that strongly encourages and favors arbitration. *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 90 (Tex.1996) (orig.proceeding) (per curiam) (citing *L.H. Lacy Co. v. City of Lubbock,* 559 S.W.2d 348, 351 (Tex.1977)). We review a trial court's determination concerning the existence of an arbitration agreement under an abuse-of-discretion standard. *Southwest Tex. Pathology Assocs., L.L.P. v. Roosth,* 27 S.W.3d 204, 207 (Tex.App.-San Antonio 2000, pet. dism'd w.o.j.); *ANCO Ins. Servs. of Houston, Inc. v. Romero,* 27 S.W.3d 1, 3 (Tex.App.-San Antonio 2000, pet. denied). As noted by the majority, the abuse-of-discretion standard contains both legal and factual components. *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex. 1992) (orig.proceeding). To the extent our review addresses the trial court's legal in-terpretation of the arbitration clause at issue—a question of law—we perform a de novo review. *D. Wilson Constr. Co. v. Cris Equip. Co., Inc.,* 988 S.W.2d 388, 393 (Tex.App.-Corpus Christi 1999, orig. proceeding) (op. on reh'g); *Leander Cut Stone Co., Inc. v. Brazos Masonry, Inc.,* 987 S.W.2d 638, 640 (Tex.App.-Waco 1999, no pet.). To establish that a trial court abused its discretion in resolving a factual issue, a party must show that the trial court reasonably could have reached only one decision. *Walker,* 827 S.W.2d at 840.

Under federal law, a district court's finding regarding the existence of an agreement to arbitrate is reviewed like "any other district court decision finding an agreement between parties, i.e., accepting findings of fact that are not 'clearly erroneous' but deciding questions of law *de novo.*" *Hardin Constr. Group, Inc. v. Strictly Painting, Inc.,* 945 S.W.2d 308, 312 (Tex.App.-San Antonio 1997, orig. proceeding [mand. denied]) (quoting *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 947–48, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). A finding is clearly erroneous under federal standards when there is evidence to support it, but on reviewing the evidence the court is left with a definite and firm conviction that a mistake has been made. *Id.* (citing *Price v. Drexel Burnham Lambert, Inc.,* 791 F.2d 1156, 1159 (5th Cir.1986)). Thus, in the context of appellate review of arbitration orders, the factual component of the abuse-of-discretion standard applied by Texas courts is similar to the clearly erroneous standard applied by federal courts. *Strictly Painting,* 945 S.W.2d at 312. Further, the strong public policy favoring arbitration and the broad language of the arbitration agreement at issue here both create judicial presumptions that impose evidentiary burdens on the parties. *First Options,* 514 U.S. at 944–45, 115 S.Ct.

1920; *AT & T Techs., Inc. v. Communications Workers,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *see Prudential–Bache Sec., Inc. v. Garza,* 848 S.W.2d 803, 807 (Tex.App.-Corpus Christi 1993, orig. proceeding) (discussing evidentiary procedure). Accordingly, our review of the trial court's ruling on the two issues presented to us includes not only a legal analysis as performed by the majority but also factual components, including evidentiary burdens the majority does not consider.

## III. THE EVIDENTIARY BURDENS

Arbitration is a matter of contract; a party cannot be required to submit to arbitration unless it agreed in advance that the dispute would be arbitrated. *Lost Creek Mun. Util. Dist. v. Travis Indus. Painters, Inc.,* 827 S.W.2d 103, 105 (Tex.App.-Austin 1992, writ denied) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). A party seeking to compel arbitration under the Texas Arbitration Act (the "TAA") must make an "application" for a court order. Tex. Civ. Prac. & Rem.Code Ann. §§ 171.021(a), 171.024(b) (Vernon Supp.2003). Once a party requests arbitration, demonstrates that a written agreement to arbitrate exists, and shows that the claims presented fall within the scope of that agreement, the trial court has no discretion but to order arbitration of those claims. Tex. Civ. Prac. & Rem.Code Ann. § 171.021 (Vernon Supp. 2003); *Capital Income Props.-LXXX v. Blackmon,* 843 S.W.2d 22, 23–24 (Tex. 1992) (orig.proceeding) (per curiam).

The party seeking arbitration bears the initial burden of establishing that a claim falls within the scope of a valid arbitration agreement. *EZ Pawn Corp.,* 934 S.W.2d at 91. Once the proponent of arbitration establishes that a claim falls within the arbitration agreement, the burden shifts to the party opposing arbitration to establish some ground for revocation of the arbitration agreement. *In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d 571, 573 (Tex. 1999) (orig.proceeding) (per curiam).

Because arbitration is favored in the law, a presumption of arbitrability attaches once the existence of an arbitration agreement is established. *Cantella & Co. v. Goodwin,* 924 S.W.2d 943, 944 (Tex. 1996) (orig.proceeding) (per curiam); *Prudential Sec. Inc. v. Marshall,* 909 S.W.2d 896, 898–99 (Tex.1995) (orig.proceeding) (per curiam); *Mallick,* 978 S.W.2d at 212. Further, a broad arbitration clause that purports to cover all claims or disputes regarding the contract or its breach also creates a presumption of arbitrability. *AT & T Techs.,* 475 U.S. at 650, 106 S.Ct. 1415.

The presumptions favoring arbitration require that questions about the scope of arbitrable issues be resolved in favor of arbitration "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Collins v. Int'l Dairy Queen, Inc.,* 2 F.Supp.2d 1473, 1477 (M.D.Ga.1998) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). The strong policy favoring arbitration reflected in these presumptions applies to questions of arbitrability under the TAA as well as under the Federal Arbitration Act.[2] *See Ambulance Billings Sys., Inc., v. Gemini Ambulance Servs., Inc.,* 103 S.W.3d 507, 514 (San Antonio 2003, no pet. h.) (consolidated interlocutory appeal and orig. proceeding) (applying presumption of arbitrability in interpreting broad arbitration

2. 9 U.S.C. § 1–307 (2003).

clause under the TAA). Accordingly, "[an] order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Warrior & Gulf Navigation*, 363 U.S. at 582–83, 80 S.Ct. 1347; *Ambulance Billings Sys., Inc.*, 103 S.W.3d at 514. Given the law's presumption in favor of arbitration, where a contract provides for arbitration of some issues, it may be presumed that the parties likely gave some thought to the scope of the arbitration clause. *First Options*, 514 U.S. at 945, 115 S.Ct. 1920. In such cases, "[in] the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT & T Techs.*, 475 U.S. at 650, 106 S.Ct. 1415 (quoting *Warrior & Gulf Navigation*, 363 U.S. at 584–85, 80 S.Ct. 1347).

Thus, presumptions in favor of arbitration affect a court's application of ordinary state law principles governing the formation of contracts when determining whether the parties agreed to arbitrate a certain matter. *First Options*, 514 U.S. at 944, 115 S.Ct. 1920. However, the law treats silence or ambiguity about *who* decides arbitrability differently from the way it treats silence or ambiguity about *whether* a particular merits-related dispute falls within the scope of a valid arbitration agreement. *Id.* at 944–45, 115 S.Ct. 1920. Only if the parties did not expressly agree to submit the arbitrability question itself to arbitration should the court decide that question as it would decide any other question that the parties did not submit to arbitration, that is, independently under state law contract principles. *Id.* at 944, 115 S.Ct. 1920.

Accordingly, the *proponent* of arbitration of the arbitrability question itself, as opposed to the proponent of arbitration of a merits-based dispute, must produce "clear and unmistakable" evidence that the parties intended to *include* the arbitrability question in their arbitration agreement. *Id.* On the other hand, it is the *opponent* of arbitration of a merits-based controversy who must produce convincing evidence that the parties intended to *exclude* the controversy from the scope of the arbitration clause. *Int'l Dairy Queen*, 2 F.Supp.2d at 1477 (citing *AT & T Techs.*, 475 U.S. at 650, 106 S.Ct. 1415; *First Options*, 514 U.S. at 945, 115 S.Ct. 1920); *see Prudential Sec. Inc.*, 909 S.W.2d at 900 ("The burden was on [the parties opposing arbitration] to show that their claims fell outside the scope of the arbitration agreement.").

## IV. ANALYSIS

### A. The Arbitrability Question

The arbitration clause between Perlstein and Steller in the Amended Agreement is extremely broad, providing for arbitration of "[a]ny controversy, claim or dispute between or among the parties *directly or indirectly* concerning this Agreement or the breach thereof or the subject matter hereof, *including questions concerning the scope and applicability of this Article XVI.*" (Emphasis added.) Construction of this contract language itself is subject to the presumptions favoring arbitration created both by public policy and by the arbitration agreement's expansive "directly or indirectly" language. *Int'l Dairy Queen, Inc.*, 2 F.Supp.2d at 1477 (citing *Moses H. Cone*, 460 U.S. at 24–25, 103 S.Ct. 927). We cannot say "with positive assurance that the arbitration clause is not susceptible of an interpretation" that covers the arbitrability question. *Warrior & Gulf Navigation*, 363 U.S. at 582–83, 80 S.Ct. 1347. To the contrary, the arbitration clause expressly includes the question

of arbitrability. Moreover, public policy favoring arbitration as well as the broad "directly or indirectly" language in the arbitration clause itself both operate to create a presumption that the parties intended to include the arbitrability question within the scope of their agreement. *See First Options,* 514 U.S. at 944, 115 S.Ct. 1920; *see also AT & T Techs.,* 475 U.S. at 650, 106 S.Ct. 1415; *Neal v. Hardee's Food Sys., Inc.,* 918 F.2d 34, 38 (5th Cir.1990) (holding that parties who included language "any and all disputes" in arbitration clause intended clause to reach all aspects of their relationship); *see also B.F. Goodrich Co. v. McCorkle,* 865 S.W.2d 618, 620 (Tex.App.-Houston [14th Dist.] 1993, orig. proceeding) (holding that parties who included language "any dispute or disagreement between the parties" in arbitration clause intended clause to reach all aspects of their relationship). Accordingly, I dissent from the majority's analysis of the parties' agreement as purely a question of contract interpretation under Texas law and the majority's resulting failure to take into account the effects of the evidentiary burdens created by the arbitration clause itself. I would find that Perlstein met his burden of establishing by clear and unmistakable evidence that Steller agreed to arbitrate the question of arbitrability, and the trial court reasonably could have reached only one decision. *See Walker,* 827 S.W.2d at 840. On this record, therefore, I would hold that the trial court abused its discretion in denying Perlstein's motion to abate and compel arbitration of the arbitrability question.

Necessarily, then, I would not reach the question of whether Steller's fraud-in-the-inducement claim is subject to an implied exclusion from arbitration, either because of the terms of the remedies clause in the Purchase Agreement or because it is otherwise not subject to arbitration. That would be a decision for the arbitrators.

However, as I also dissent from the approach taken by the majority in analyzing the scope of the parties' arbitration agreement, I also address the issue of whether, on this record, the merits of the parties' controversy now in litigation is arbitrable.

## B. The Scope Question

As to whether Steller's fraudulent-inducement claim with regard to the Purchase Agreement is included within the scope of the parties' arbitration agreement in the Amended Agreement, Steller was required to produce convincing evidence that the parties intended to *exclude* the controversy from the reach of the arbitration clause. *See Int'l Dairy Queen,* 2 F.Supp.2d at 1477. It did not. Construction of the contract language itself is subject to the presumptions favoring arbitration created both by public policy and by the extremely expansive "directly or indirectly" language in the parties' arbitration agreement. *Int'l Dairy Queen, Inc.,* 2 F.Supp.2d at 1477 (citing *Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. 927). Section 16.02 of the Amended Agreement, to which the majority refers but does not recite, immediately follows the parties' general arbitration agreement in section 16.01 and contains a single exclusion to arbitration. Unlike the remedies clause in the Purchase Agreement, the express exclusion in the Amended Agreement does not include the parties' current dispute. Thus, the interplay of the various clauses in the two agreements creates even more ambiguity than those examined at length by the majority. Given the broad "directly or indirectly" language of the arbitration clause, I would conclude that inconsistent contractual provisions, whether the documents are merged or not, do not defeat the presumptions favoring arbitration. *AT & T Techs.,* 475 U.S. at 650, 106 S.Ct. 1415; *Warrior & Gulf Navigation,* 363 U.S. at 584–85, 80

S.Ct. 1347. The record is devoid of any evidence that the parties intended the remedies clause in the Purchase Agreement to create another exclusion to arbitration in addition to the single exception listed in section 16.02 of the Amended Agreement. I would conclude, on this record, that we cannot say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Warrior & Gulf Navigation*, 363 U.S. at 582–83, 80 S.Ct. 1347. "[O]nly the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT & T Techs.*, 475 U.S. at 650, 106 S.Ct. 1415 (quoting *Warrior & Gulf Navigation*, 363 U.S. at 584–85, 80 S.Ct. 1347). Steller presented no such evidence. On this record, I would conclude that Steller did not meet its burden to produce convincing evidence that the parties intended to exclude Steller's fraudulent-inducement claim from arbitration. *See Warrior & Gulf Navigation*, 363 U.S. at 582–83, 80 S.Ct. 1347.

How arbitrators would decide the issue, of course, would be based on the record developed before the arbitrators regarding the parties' intent. Steller, as the opponent of arbitration of a merits-based dispute, would be required to produce to the arbitrators convincing evidence that the parties intended to *exclude* the party's current controversy from the reach of the arbitration clause. *See Int'l Dairy Queen*, 2 F.Supp.2d at 1477. In any event, since the majority reached the issue of the arbitrability of the parties' current dispute, I also dissent from the majority's conclusion that the trial court did not abuse its discretion in denying Perlstein's motion to compel arbitration of Steller's fraudulent-inducement claim.

I would reverse the trial court's order denying Perlstein's motion to compel arbitration and order the case abated pending arbitration of the arbitrability question.

