**HARDIN CONSTRUCTION GROUP, INC. and San Antonio 2000, Ltd., Appellants,**

**v.**

**STRICTLY PAINTING, INC., Appellee.**

**HARDIN CONSTRUCTION GROUP, INC. and San Antonio 2000, Ltd., Relators,**

**v.**

**The Honorable David PEEPLES, Respondent.**

**No. 04–97–00121–CV.**

Court of Appeals of Texas, San Antonio.

April 30, 1997.

Rehearing Overruled May 22, 1997.

Thomas H. Asselin, L. Bruce Stout, Peterson, Dillard, Young, Asselin & Powell, L.L.P., Atlanta, GA, Peter L. Kilpatrick, Jeffers & Banack Incorporated, Thomas H. Crofts, Jr., Crofts, Callaway & Jefferson, P.C., San Antonio, for appellants.

Fred Shannon, Mitchell L. Widenbach, Charles Estee, Shannon, Weidenbach & Estee, Inc., San Antonio, for appellee.

Before GREEN, DUNCAN and ANGELINI, JJ.

GREEN, Justice.

Appellants/Relators, Hardin Construction Group, Inc. and San Antonio 2000, Ltd.

("Hardin"), seek relief from the trial court's denial of Hardin's motion to compel arbitration with Strictly Painting, Inc. ("Strictly"). Pursuant to the Texas Arbitration Act, Hardin has filed an interlocutory appeal of the trial court's order denying the motion. Hardin has also filed a motion for leave to file a petition for writ of mandamus under the Federal Arbitration Act. We previously granted the motion for leave to file the petition for writ of mandamus and consolidated the two proceedings.

We conclude the Federal Arbitration Act applies; therefore, we dismiss Hardin's interlocutory appeal. In addition, we conditionally grant the writ of mandamus because we conclude that Judge Peeples abused his discretion in his resolution of the factual issue regarding the existence of an agreement to arbitrate.

## FACTS

Hardin is a Georgia corporation and was the general contractor on a Hyatt Regency project in San Antonio, Texas. Hardin accepted a bid from Strictly for a painting subcontract. Strictly also is a Georgia corporation.

On November 2, 1995, shortly after Hardin accepted Strictly's bid, Hardin forwarded a form of subcontract to Strictly for execution. The subcontract form was identical to the subcontract executed by Strictly in connection with three previous Hardin projects that were in excess of $100,000.00, with the exception of the performance bond requirement. Each of the subcontracts included an arbitration provision. A similar arbitration provision was also included in Hardin's short form subcontract that Strictly had executed in connection with numerous smaller Hardin projects.

On November 20, 1995, Strictly submitted its first monthly request for payment. Although Hardin paid the request, Hardin forwarded a letter to Strictly dated December 7, 1995, stating that it was not obligated to make any payments until the signed Subcontract and Bonds were returned to Hardin.

On December 12, 1995, Strictly returned the unexecuted subcontract to Hardin with a letter implicitly agreeing to all of its terms except that Strictly wanted to eliminate the bond requirement. Strictly stated that since the bid documents did not indicate or request bonds, no bonds were quoted. Strictly concluded:

> In good faith Strictly Painting mobilized and began work on this project prior to receiving this contract. We will continue to work with the intention that this would not be a stumbling block. Please make these changes and forward the contract so that I may sign and return within 2 days.

Between December 12, 1995, and December 17, 1995, a series of field orders were executed by the parties regarding additional work to be performed by Strictly on the project. On December 19, 1995, Strictly submitted its second monthly request for payment, which Hardin paid. Between December 20, 1995, and January 16, 1996, another series of field orders were executed regarding additional work. Then, by letter dated January 18, 1996, Hardin demanded that Strictly immediately execute the subcontract and fulfill the bond requirement. Hardin stated that it would reimburse the cost of the bond.

The parties were never able to subsequently resolve the bond issue,[1] and Strictly never executed the subcontract. Nevertheless, Strictly continued to perform and substantially completed its work on the project.

Ultimately, Strictly sued Hardin alleging breach of contract/estoppel, fraud, quantum meruit and lien claims. Strictly alleged that Hardin "wrongfully refused to make progress payments and to date has wrongfully withheld approximately $557,872.50." Hardin answered and filed a motion to stay the trial proceeding and to compel arbitration. Strictly responded by denying that it entered into an agreement to arbitrate. After an

---

1. Strictly's president testified in his affidavit and at the evidentiary hearing that a bond could not be obtained after performance commenced. Hardin's project manager agreed during cross-examination at the evidentiary hearing that obtaining a bond after construction had commenced would be difficult.

evidentiary hearing, Judge Peeples denied Hardin's motion to compel.

## FEDERAL OR STATE ARBITRATION ACT

 The Federal Arbitration Act applies to contracts relating to interstate commerce. *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 269–70 & n. 6 (Tex.1992); *Belmont Constructors, Inc. v. Lyondell Petrochemical Co.,* 896 S.W.2d 352, 356 (Tex. App.—Houston [1st Dist.] 1995, orig. proceeding). The following uncontroverted facts support the conclusion that the contract at issue relates to interstate commerce:

1. Both Hardin and Strictly are Georgia corporations based in Atlanta, Georgia.
2. The project was located in Texas.
3. Strictly retained the services of Texas subcontractors and a subcontractor based in Alabama.
4. Employees were hired in Georgia to perform work on the project in Texas.
5. Supplies were purchased by Strictly in Texas.

Therefore, we conclude that the contract at issue relates to interstate commerce, the Federal Act applies to this dispute, and Hardin may seek relief through the remedy of a writ of mandamus. Accordingly, we dismiss Hardin's interlocutory appeal and proceed to consider its mandamus petition.[2]

## STANDARD OF REVIEW

Hardin couches its complaint regarding Judge Peeple's denial of its motion to compel arbitration in terms of an abuse of discretion standard. Strictly responds that the trial court's order is reviewed under a "no evidence" standard. Therefore, we must first consider the proper standard of review applicable in reviewing a trial court's determination regarding the existence of an arbitration agreement in a mandamus proceeding.

For its contention that the trial court's order should be reviewed under a "no evidence" standard, Strictly cites *Hearthshire Braeswood Plaza Ltd. Partnership v. Bill Kelly Co.,* 849 S.W.2d 380, 384 (Tex.App.—Houston [14th Dist.] 1993, writ denied), and *Pony Express Courier Corp. v. Morris,* 921 S.W.2d 817, 820 (Tex.App.—San Antonio 1996, no writ). This court's decision in *Pony Express* did not address the applicable standard for reviewing a trial court's finding regarding the existence of an arbitration agreement, and, therefore, *Pony Express* does not resolve the issue. In addition, in adopting a "no evidence" standard in *Hearthshire Braeswood Plaza Ltd. Partnership,* the Houston court relied on an earlier decision in which the parties agreed upon the applicable standard without further discussion of the propriety of the standard. 849 S.W.2d at 384 (citing *Gulf Interstate Engineering Co. v. Pecos Pipeline and Producing Co.,* 680 S.W.2d 879, 881 (Tex.App.—Houston [1st Dist.] 1984, writ dism'd)); *see also Wetzel v. Sullivan, King & Sabom, P.C.,* 745 S.W.2d 78, 79 (Tex.App.—Houston [1st Dist.] 1988, no writ)(citing *Gulf Interstate Engineering Co.* as authority for rejecting "abuse of discretion" standard and adopting "no evidence" standard).

The Texas Supreme Court has not commented on the appropriate standard of review; however, the Court has stated that if material facts necessary to determine an issue to be summarily decided by the trial court are controverted, the trial court must conduct an evidentiary hearing to determine the disputed material facts. *Jack B. Anglin Co.,* 842 S.W.2d at 269. This evidentiary hearing requirement is similar to the federal statute which allows a party to demand a jury trial with regard to the issue of whether an agreement to arbitrate exists. 9 U.S.C.A. § 4 (West 1970); *see also Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.,* 636 F.2d 51, 54–55 (3rd Cir.1980)(discussing jury requirement); *Century Steel Erectors, Inc. v. Aetna Casualty & Surety Co.,* 757 F.Supp. 659, 661 (W.D.Pa.1990)(jury to determine existence of agreement if issue of fact exists).

---

**2.** Strictly suggests that we treat Hardin's interlocutory appeal as an election of remedies or, alternatively, find the interlocutory appeal to be frivolous and take other appropriate action. The Texas legislature's failure to provide for an interlocutory appeal of the denial of a motion to compel pursuant to the Federal Act has been criticized by the Texas Supreme Court. *See Jack B. Anglin Co.,* 842 S.W.2d at 272. The confusion created by the legislature's failure to provide for such an appeal is understandable.

Under the federal law, a district court's finding regarding the existence of an agreement to arbitrate is reviewed like "any other district court decision finding an agreement between parties, i.e., accepting findings of fact that are not 'clearly erroneous' but deciding questions of law *de novo.*" *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 947–48, 115 S.Ct. 1920, 1926, 131 L.Ed.2d 985 (1995); *see also Walker v. J.C. Bradford & Co.,* 938 F.2d 575, 576–77 (5th Cir.1991)(factual foundation underlying question of waiver of arbitration reviewed under clearly erroneous standard); *Nordin v. Nutri/System, Inc.,* 897 F.2d 339, 344 (8th Cir.1990)(factual findings as to arbitrability are reviewed under clearly erroneous standard). "As one federal appellate court noted, in many respects, findings made by district courts when disposing of motions to stay pending arbitration are treated the same as other findings made after a bench trial .... [w]hen reviewing the district court's factual findings, we apply the same clearly erroneous standard that is applied when reviewing the court's findings after a bench trial." *Marshall v. Green Giant Co.,* 942 F.2d 539, 548 (8th Cir.1991). A finding is clearly erroneous when there is evidence to support it, but the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Price v. Drexel Burnham Lambert, Inc.,* 791 F.2d 1156, 1159 (5th Cir.1986).

In *Walker v. Packer,* the Texas Supreme Court recognized that the abuse of discretion standard contains both a factual and legal component. 827 S.W.2d 833, 839–40 (Tex.1992). In order to establish that a trial court abused its discretion in resolving a factual issue, a party must establish that the "trial court could reasonably have reached only one decision." *Id.*

We can discern no reasonable basis for reviewing a trial court's findings as to the existence of an arbitration agreement differently than other findings a trial court is required to make in exercising its discretion. Accordingly, the factual component of the abuse of discretion standard, which is similar to the clearly erroneous standard applied by the federal courts, appears to be a more appropriate standard for reviewing such findings than a "no evidence" standard. Therefore, we hold that the proper standard for reviewing a trial court's determination regarding the existence of an arbitration agreement in a mandamus proceeding is abuse of discretion.

## FACTUAL FINDING

Hardin contends that since Strictly only objected to the bond requirement in the subcontract form, Strictly agreed to all the other terms of the subcontract, including the arbitration provision. Strictly counters that its performance was based upon the contract formed by the bid documents and that the letter establishes that the subcontract form included new terms that were unacceptable. Since Hardin did not remove the unacceptable terms, Strictly asserts that an agreement as to the subcontract form, including the arbitration provision, was never reached.

Although the Federal Act is applicable in the instant case, we apply Texas law in determining whether the parties agreed to arbitrate. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. at 948, 115 S.Ct. at 1926 (federal courts required to apply ordinary state-law principles governing the formation of contracts in deciding whether the parties agreed to arbitrate a certain matter); *Neal v. Hardee's Food Systems, Inc.,* 918 F.2d 34, 37–38 n. 5 (5th Cir.1990)(federal law governing validity of an arbitration clause incorporates generally accepted principles of contract law as shaped by state law). Under general Texas-law principles, parties may agree upon certain contractual terms, understanding them to be an agreement, while leaving other portions of an agreement for future negotiation. *Scott v. Ingle Bros. Pacific, Inc.,* 489 S.W.2d 554, 555 (Tex.1972); *see also Texas Oil Co. v. Tenneco Inc.,* 917 S.W.2d 826, 830 (Tex.App.—Houston [14th Dist.] 1994, writ granted); *McCulley Fine Arts Gallery, Inc. v. "X" Partners,* 860 S.W.2d 473, 477 (Tex.App.—El Paso 1993, no writ); *Solomon v. Greenblatt,* 812 S.W.2d 7, 15 (Tex.App.—Dallas 1991, no writ). Only when an essential term is left open for future negotiation will the agreement be held not binding. *T.O. Stanley Boot Co. v. Bank of El*

*Paso,* 847 S.W.2d 218, 221 (Tex.1992); *America's Favorite Chicken Co. v. Samaras,* 929 S.W.2d 617, 622 (Tex.App.—San Antonio 1996, n.w.h.). Whether the parties intend to be bound by the terms upon which preliminary agreement is reached is a question of fact. *Foreca, S.A. v. GRD Development Co.,* 758 S.W.2d 744, 745–46 (Tex.1988); *Scott,* 489 S.W.2d at 556. A court will more readily find an intent to be bound where substantial performance has been rendered or material action has been taken in reliance upon the existing expressions of agreement. *Scott,* 489 S.W.2d at 556.

Whether Hardin and Strictly agreed to arbitrate is a question of fact governed by the foregoing general contract principles. *See Shearson Lehman Hutton, Inc. v. McKay,* 763 S.W.2d 934, 937 (Tex.App.—San Antonio 1989, orig. proceeding). Therefore, whether an agreement to arbitrate exists is determined by: (1) whether the performance bond requirement is an essential term of the subcontract; and (2) whether Hardin and Strictly intended to be bound by all the terms of the subcontract except the performance bond requirement.

The bond was not an essential term of the contract as is evidenced by the fact that Strictly substantially performed the work in its absence. Given Strictly's letter stating that it would execute and return the subcontract upon deletion of the performance bond requirement and its continued performance in a manner consistent with the subcontract terms, we find that the only reasonable conclusion that Judge Peeples could have reached was that Strictly agreed to be bound by all the terms of the subcontract except the performance bond requirement. Therefore, Judge Peeples should have determined that Hardin and Strictly agreed to arbitration. Since Judge Peeples reached the opposite conclusion, we hold that he abused his discretion.

### CONCLUSION

■ When a trial court erroneously denies a party the right to arbitration under the Federal Act, the party has no adequate remedy at law. *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 91 (Tex.1996). Judge Peeples

abused his discretion in determining that no agreement to arbitrate existed between Hardin and Strictly, thereby denying Hardin its right to arbitration. Therefore, we conditionally grant Hardin's writ of mandamus and direct Judge Peeples to: (1) vacate his order denying Hardin's motion to compel; and (2) order Strictly's claims against Hardin to arbitration. The writ will issue only upon certification to this court that Judge Peeples has not so ordered arbitration within ten days of this opinion.