v99267.dp1














COURT OF APPEALS


THIRTEENTH DISTRICT OF TEXAS


CORPUS CHRISTI


 

NUMBER 13-03-00525-CV


PETERSON CONSTRUCTION, INC., ET AL. Appellants,

v.


SUNGATE DEVELOPMENT, L.L.C. Appellee.

On appeal from the 370th District Court of Hidalgo County, Texas 


 

NUMBER 13-03-00653-CV

IN RE: PETERSON CONSTRUCTION, INC., Relator.

On Petition for Writ of Mandamus


 

NUMBER 13-03-00665-CV

IN RE: CERVIS PLUMBING, INC. Relator.

On Petition for Writ of Mandamus


 

MEMORANDUM OPINION 


Before Justices Hinojosa, Yañez, and Castillo*


Opinion by Justice Yañez




 On September 8, 2003, in Cause No. 13-03-00525-CV, appellants, Peterson Construction, Inc., et al., appealed the trial
court's order in cause number C-1895-02-G in the 370th District Court in Hidalgo County, Texas, styled Sungate
Development, L.L.C. v. Cervis Plumbing, Inc. and Peterson Construction, Inc., denying a motion to compel arbitration filed
by appellee, Sungate Development, L.L.C. ("Sungate").

 On October 21, 2003, Relator, Peterson Construction, Inc. ("Peterson"), filed a petition for writ of mandamus in Cause No.
13-03-00653-CV, requesting this Court to direct the Respondent, the Honorable Noe Gonzalez, presiding judge of the
370th District Court of Hidalgo County, Texas, to: (1) vacate his June 19, 2003 order denying Relator Peterson's motion to
compel arbitration and granting real party-in-interest/appellee Sungate's motion to stay arbitration; and (2) enter an order (a)
compelling Sungate to arbitration and (b) staying the underlying lawsuit.

 On October 28, 2003, in Cause No. 13-03-00665-CV, Relator, Cervis Plumbing, Inc. ("Cervis"), filed a petition for writ of
mandamus in which it requested relief identical to that sought by Relator Peterson in Cause No. 13-03-00653-CV. 

 Given the nature of these petitions for writ of mandamus and related appeal, this Court has concluded that these cases
should be considered together. 

 Section 171.017 of the civil practice and remedies code permits an interlocutory appeal from an order denying an
application to compel arbitration under the Texas Arbitration Act ("TAA"). See Tex. Civ. Prac. & Rem. Code Ann. §§
171.017(a)(1), 171.098(a)(1) (Vernon 1997 & Supp. 2003). A party may not, however, appeal the denial of a motion to
compel under the Federal Arbitration Act ("FAA"). See Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 272 (Tex. 1992)
(original proceeding); Phillips v. ACS Mun. Brokers, Inc., 888 S.W.2d 872, 874 (Tex. App.-Dallas 1994, no writ) ("Texas
courts have no jurisdiction to review an interlocutory order denying arbitration under the Federal Act.");D. Wilson Constr.
Co. v. McAllen Indep. Sch. Dist., 848 S.W.2d 226, 228 (Tex. App.-Corpus Christi 1992, writ dism'd w.o.j.) (same). 

 Mandamus, not interlocutory appeal, is the proper means for reviewing an order denying arbitration under the FAA. In re
Valero Energy Corp., 969 S.W.2d 916, 916 (Tex. 1998) (citing Anglin, 842 S.W.2d at 271-72); In re MONY Secs. Corp. v.
Durham, 83 S.W.3d 279, 282 (Tex. App.-Corpus Christi 2002, no pet.) (combined appeal and orig. proceeding); Pennzoil
v. Arnold Oil Co., 30 S.W.3d 494, 497 (Tex. App.-San Antonio 2000, orig. proceeding). 

 We conclude that the arbitration provision at issue in the cases before us evidences a "transaction involving commerce"
and is subject to the FAA. See In re MONY, 83 S.W.3d at 282-83. Thus, we have no jurisdiction to consider appellant's
interlocutory appeal. Accordingly, we DISMISS the interlocutory appeal in Cause No. 13-03-00525 for want of
jurisdiction. See id. at 283. 

 Having reviewed the petitions for writ of mandamus and documents on file, this Court is of the opinion that the petitions
for writ of mandamus should be denied. 

 Relator Peterson's petition for writ of mandamus in Cause No. 13-03-00653-CV is hereby DENIED. Relator Cervis's
petition for writ of mandamus in Cause No. 13-03-00665 is also hereby DENIED.

 __________________________________

 LINDA REYNA YAÑEZ

 Justice 







*Separate opinion by Justice

Errlinda Castillo to follow.



Opinion delivered and filed 

this the 30th day of October, 2003. 















COURT OF APPEALS




THIRTEENTH DISTRICT OF TEXAS




CORPUS CHRISTI







 

NUMBER 13-03-00525-CV

 

PETERSON CONSTRUCTION, INC., ET AL. , Appellants,



v.




SUNGATE DEVELOPMENT, L.L.C. , Appellee.



On appeal from the 370th District Court of Hidalgo County, Texas.





 

NUMBER 13-03-00653-CV



IN RE: PETERSON CONSTRUCTION, INC. Relator.



On Petition for Writ of Mandamus





 

NUMBER 13-03-00665-CV



IN RE: CERVIS PLUMBING, INC. Relator.



On Petition for Writ of Mandamus







CONCURRING AND DISSENTING OPINION



Before Justices Hinojosa, Yañez, and Castillo


Concurring and Dissenting Opinion by Justice Castillo




 I agree that these consolidated cases present an arbitration issue governed by the Federal Arbitration Act (1) and are not
subject to direct appeal. However, I respectfully dissent from the majority's denial of the two mandamus petitions. 

I. THE ARBITRATION CLAUSE AT ISSUE


 On May 12, 2000, Sungate Development, L.L.C., as owner, and Peterson Construction, Inc., as contractor, signed AIA
Document A101-1997, "Standard Form of Agreement Between Owner and Contractor" (the "Owner/Contractor
Agreement"). The Owner/Contractor Agreement enumerated as one of the contract documents AIA Document A201-1997,
"General Conditions of the Contract for Construction" (the "General Conditions"). The General Conditions recited in an
explanatory introduction as follows:

 DISPUTE RESOLUTION-MEDIATION AND ARBITRATION. This document contains provisions for mediation
and arbitration of claims and disputes. Mediation is a non-binding process, but is mandatory under the terms of this
document. Arbitration is mandatory under the terms of this document and binding in most states and under the Federal
Arbitration Act. . . . 

The arbitration clause in the General Conditions recited:

 Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as
provided for in Subparagraphs 4.3.10, 9.10.4 and 9.10.5, shall, after decision by the Architect or 30 days after submission
of the Claim to the Architect, be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by
mediation in accordance with the provisions of Paragraph 4.5. 

The General Conditions defined "Claim" as follows:

 A claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract
terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term "Claim" also
includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the
Contract. Claims must be initiated by written notice. The responsibility to substantiate Claims shall rest with the party
making the Claim. 

[Emphasis added.] 

 Peterson filed an arbitration proceeding in July 2002 regarding Sungate's nonpayment under their contract. In
September 2002, Sungate sued Peterson and Cervis Plumbing Inc., one of Peterson's subcontractors on the project, alleging,
among other claims, that:

 Defendants CERVIS and PETERSON failed to adequately and responsibly construct, supervise, inspect, test, and/or install
the building's plumbing, HVAC system controls, condensate drain system, insulation, electrical system, ventilation system,
air quality, building envelope and foundation. These defects in the construction, along with others, have led to substantial
damages to the Plaintiff. 

 Peterson and Cervis moved for abatement and an order compelling arbitration. Sungate resisted, asserting as to Peterson: 
(1) Peterson fraudulently induced Sungate into agreeing to the arbitration clause and signing the Owner/Contractor
Agreement; (2) Sungate signed only the Owner/Contractor Agreement, not the General Conditions; (3) Peterson did not
provide a copy of the General Conditions to Sungate at the time the parties signed the Owner/Contractor Agreement; and
(4) Peterson did not satisfy conditions precedent to enforceability of the arbitration clause or otherwise waived or is
estopped from compelling arbitration. Sungate also asserted that its claims against Cervis were not arbitrable because
Cervis was not a signatory to the contract between Sungate and Peterson. The trial court agreed with Sungate. 

II. THE ISSUES PRESENTED


 In determining if the arbitration clause compels arbitration, the trial court was required to decide two issues: (1) whether a
valid, enforceable arbitration agreement exists; and (2) if so, whether the asserted claim falls within the scope of the
agreement. Dallas Cardiology Assocs., P.A. v. Mallick, 978 S.W.2d 209, 212 (Tex. App.-Texarkana 1998, pet. denied);
Nationwide of Bryan, Inc. v. Dyer, 969 S.W.2d 518, 520 (Tex. App.-Austin 1998, no pet.). 

A. Existence of a Valid, Enforceable Arbitration Agreement


 The record contains an affidavit by Paul Mayeux, the architect on the project, that recites as follows:

 On May 12, 2000, I personally attended a meeting between Jose Garcia, (2) Pancho Villarreal and Tom Peterson. The
purpose of the meeting was to review the Contract between Peterson Construction, Inc. and Sungate Development
regarding the construction of the Wingate Inn. Mr. Garcia attended on behalf of Sungate Development, Mr. Peterson
attended on behalf of Peterson Construction. 



 At the meeting, Mr. Peterson presented the original contract of the Standard Form of Agreement but did not produce a
copy of the American Institute of Architects ("AIA") document A201-1997 for Sungate Development to review. I did not
have a copy of the Form A201 either. This was a sticking point at the meeting as Mr. Garcia reviewed the Standard Form of
Agreement and insisted on reviewing the terms of the Form A201-1997 before executing the Contract. Mr. Garcia
suggested that they should reconvene on another day when all of the contract terms were available for his review. Mr.
Peterson insisted that there was no reason to delay the signing and that he wanted to start construction immediately. 



 While Mr. Peterson was seated at the table, I informed Mr. Garcia that the standard terms and conditions from Form
A201-1997 contained terms that I believed (and still believe) are not applicable to any disputes that would arise between
Sungate and Peterson Construction. I explained that it contained terms regarding disputes between myself as the architect
and Peterson and terms covering arbitration of disputes between the architect and the general contractor. 



 Mr. Garcia then stated that he refused to sign any contract that would require Sungate to arbitrate any disputes with
Peterson Construction arising out of the construction of the Wingate Inn. I informed Mr. Garcia that I believed the
arbitration provision included in the terms of A201, which still had not been produced to Sungate for Mr. Garcia's review,
would not apply to disputes between Peterson Construction and Sungate Development. After telling this to Mr. Garcia, Mr.
Garcia specifically stated that he would not sign a contract that included a provision to arbitrate construction defect claims
or any dispute. I looked to Mr. Peterson to see if he felt otherwise. There was a moment of silence while I waited for Mr.
Peterson to confirm or deny that he believed an arbitration provision would apply to any disputes between Sungate and
Peterson Construction, during which Mr. Peterson said nothing indicating to me that it would apply. 



 Mr. Garcia again insisted that he was unwilling to agree to any terms that included an arbitration provision applicable to
Sungate and that he would only sign on condition that Peterson understood that the arbitration provision, if there was one,
and other terms of the Form A201, which Mr. Garcia had not seen, would not apply to any dispute involving Sungate. Mr.
Peterson then told Mr. Garcia he did not want to delay the construction and that Mr. Garcia could 'go ahead and sign the
contract.' After Mr. Peterson made these assurances, Mr. Garcia then executed the Standard Form of Agreement. 



 Significantly, I note that the Owner/Contractor Agreement provided for the following commencement date: 

 3.3 The date of commencement of the Work shall be the date of this Agreement unless a different date is stated below or
provision is made for the date to be fixed in a notice to proceed issued by the Owner.



 (Insert the date of commencement if it differs from the date of this Agreement or, if applicable, state that the date will be
fixed in a notice to proceed.)



 The date of commencement will be stated on a Notice to Proceed signed by both the Owner and Contractor.



 Also, the following disclaimers appeared in the margin of the front page of the Owner/Contractor Agreement: 

 This document has important legal consequences. Consultation with an attorney is encouraged with respect to its
completion or modification. 



 AIA Document A201-1997 General Conditions of the Contract for Construction is adopted in this document by reference. 
Do not use with other general conditions unless this document is modified. 

B. The Scope of the Arbitration Agreement


 Peterson and Cervis both present issues regarding the scope of the arbitration agreement. Peterson first raises a question of
arbitrability, that is, the question of whether Sungate's claim that Peterson did not satisfy conditions precedent to
arbitration or waived or is otherwise estopped from compelling arbitration is itself subject to arbitration. Peterson also
presents the issue of whether Sungate's claims against it are subject to arbitration on the merits. Similarly, Cervis presents
the issue of whether Sungate's claims against it are subject to arbitration on the merits. 

III. THE STANDARD OF REVIEW


 Federal law long has followed a public policy that strongly encourages and favors arbitration. EZ Pawn Corp. v. Mancias,
934 S.W.2d 87, 90 (Tex. 1996) (orig. proceeding) (per curiam) (citing L. H. Lacy Co. v. City of Lubbock, 559 S.W.2d 348,
351 (Tex. 1977)). We review a trial court's determination concerning the existence of an arbitration agreement under an
abuse-of-discretion standard. Southwest Tex. Pathology Assocs., L.L.P. v. Roosth, 27 S.W.3d 204, 207 (Tex. App.-San
Antonio 2000, pet. dism'd w.o.j.);ANCO Ins. Servs. of Houston, Inc. v. Romero, 27 S.W.3d 1, 3 (Tex. App.-San Antonio
2000, pet. denied). 

 The abuse-of-discretion standard contains both legal and factual components. Walker v. Packer, 827 S.W.2d 833, 839-40
(Tex. 1992) (orig. proceeding). To the extent appellate review addresses the trial court's legal interpretation of the
arbitration clause at issue - a question of law - we perform a de novo review. D. Wilson Constr. Co. v. Cris Equip. Co.,
Inc., 988 S.W.2d 388, 393 (Tex. App.-Corpus Christi 1999, orig. proceeding) (op. on reh'g); Leander Cut Stone Co. v.
Brazos Masonry, Inc., 987 S.W.2d 638, 640 (Tex. App.-Waco 1999, no pet.). To establish that a trial court abused its
discretion in resolving a factual issue, a party must show that the trial court reasonably could have reached only one
decision. Walker, 827 S.W.2d at 840. 

 Under federal law, a district court's finding regarding the existence of an agreement to arbitrate is reviewed like "any other
district court decision finding an agreement between parties, i.e., accepting findings of fact that are not 'clearly erroneous'
but deciding questions of law de novo." Hardin Constr. Group, Inc. v. Strictly Painting, Inc., 945 S.W.2d 308, 312 (Tex.
App.-San Antonio 1997, orig. proceeding [mand. denied]) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938,
947-48 (1995)). A finding is clearly erroneous under federal standards when there is evidence to support it, but on
reviewing the evidence the court is left with a definite and firm conviction that a mistake has been made. Id. (citing Price
v. Drexel Burnham Lambert, Inc., 791 F.2d 1156, 1159 (5th Cir. 1986)). Thus, in the context of appellate review of
arbitration orders, the factual component of the abuse-of-discretion standard applied by Texas courts is similar to the
clearly erroneous standard applied by federal courts. Strictly Painting, 945 S.W.2d at 312. 

 Finally, the strong public policy favoring arbitration and the broad language of the arbitration agreement at issue here both
create judicial presumptions that impose evidentiary burdens on the parties. First Options, 514 U.S. at 944-45; AT&T
Techs., Inc. v. Communications Workers, 475 U.S. 643, 649 (1986); see Prudential-Bache Sec., Inc. v. Garza, 848 S.W.2d
803, 807 (Tex. App.-Corpus Christi 1993, orig. proceeding) (discussing evidentiary procedure). 

 

IV. THE EVIDENTIARY BURDENS


 Arbitration is a matter of contract; a party cannot be required to submit to arbitration unless it agreed in advance that the
dispute would be arbitrated. Lost Creek Mun. Util. Dist. v. Travis Indus. Painters, Inc., 827 S.W.2d 103, 105 (Tex.
App.-Austin 1992, writ denied) (citing United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)). 
The proponent of arbitration bears the initial burden of presenting evidence of an arbitration agreement between the parties.
In re Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 573 (Tex. 1999) (orig. proceeding) (per curiam). The burden then
shifts to the opponent of arbitration to present evidence that the arbitration agreement was procured in an unconscionable
manner, induced, or procured by fraud or duress. Id. 

 Because arbitration is favored in the law, a presumption of arbitrability attaches once the existence of an arbitration
agreement is established. Cantella & Co. v. Goodwin, 924 S.W.2d 943, 944 (Tex. 1996) (orig. proceeding) (per
curiam);Prudential Sec. Inc. v. Marshall, 909 S.W.2d 896, 898-99 (Tex. 1995) (orig. proceeding) (per curiam); Mallick,
978 S.W.2d at 212. Further, a broad arbitration clause that purports to cover all claims or disputes regarding the contract or
its breach also creates a presumption of arbitrability. AT&T Techs., 475 U.S. at 650. 

 The presumptions favoring arbitration require that questions about the scope of arbitrable issues be resolved in favor of
arbitration "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay,
or a like defense to arbitrability." Collins v. Int'l Dairy Queen, Inc., 2 F. Supp. 2d 1473, 1477 (M.D. Ga. 1998) (quoting
Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)). 

 The strong policy favoring arbitration reflected in these presumptions applies to questions of arbitrability under both the
Texas Arbitration Act and the Federal Arbitration Act. See Ambulance Billings Sys., Inc., v. Gemini Ambulance Servs.,
Inc., 103 S.W.3d 507, 514 (Tex. App.-San Antonio 2003, no pet.) (consolidated interlocutory appeal and orig. proceeding)
(applying presumption of arbitrability in interpreting broad arbitration clause under the TAA). Accordingly, "[an] order to
arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration
clause is not susceptible of an interpretation that covers the asserted dispute." Warrior & Gulf Navigation, 363 U.S. at
582-83;Ambulance Billings Sys., Inc.,103 S.W.3d at 514. 

 Given the law's presumption in favor of arbitration, where a contract provides for arbitration of some issues, it may be
presumed that the parties likely gave some thought to the scope of the arbitration clause. First Options, 514 U.S. at 945. In
such cases, "[in] the absence of any express provision excluding a particular grievance from arbitration, we think only the
most forceful evidence of a purpose to exclude the claim from arbitration can prevail." AT&T Techs., 475 U.S. at 650
(quoting Warrior & Gulf Navigation, 363 U.S. at 584-85). 

 Thus, presumptions in favor of arbitration affect a court's application of ordinary state law principles governing the
formation of contracts when determining whether the parties agreed to arbitrate a certain matter. First Options, 514 U.S. at
944.However, the law treats silence or ambiguity about who decides arbitrability differently from the way it treats silence or
ambiguity about whether a particular merits-related dispute falls within the scope of a valid arbitration agreement. Id. at
944-45. Only if the parties did not expressly agree to submit the arbitrability question itself to arbitration should the court
decide that question as it would decide any other question that the parties did not submit to arbitration, that is,
independently under state law contract principles. Id. at 944.

 Accordingly, the proponent of arbitration of the arbitrability question itself, as opposed to the proponent of arbitration of a
merits-based dispute, must produce "clear and unmistakable" evidence that the parties intended to include the arbitrability
question in their arbitration agreement. Id. On the other hand, it is the opponent of arbitration of a merits-based
controversy who must produce convincing evidence that the parties intended to exclude the controversy from the scope of
the arbitration clause. Int'l Dairy Queen, 2 F. Supp. 2d at 1477 (citing AT&T Techs., 475 U.S. at 650; First Options,
514 U.S. at 945); see Prudential Sec. Inc., 909 S.W.2d at 900 ("The burden was on [the parties opposing arbitration] to
show that their claims fell outside the scope of the arbitration agreement."). 

V. ANALYSIS


A. Existence of a Valid, Enforceable Arbitration Agreement


 As proponents of arbitration, Peterson and Cervis bore the initial burden of presenting evidence of an arbitration
agreement. See In re Oakwood Mobile Homes,987 S.W.2d at 573. By introducing the executed Owner/Contractor
Agreement, which incorporated the General Conditions and its arbitration clause, Peterson carried its initial burden. (3) The
burden then shifted to Sungate to establish some ground for revocation of the arbitration agreement. Id. 

 The disclaimers on the face of the Owner/Contractor Agreement and Mayeux's testimony about the conversations between
the parties when signing the document establish that Sungate, through its attorney and agent Garcia, was on notice that: (1)
the Owner/Contractor Agreement incorporated General Conditions; and (2) the General Conditions included an arbitration
clause. See Gilliam v. Global Leak Detection U.S.A., Inc., 141 F. Supp. 2d 734, 737-38 (S.D. Tex. 2001). By signing the
Owner/Contractor Agreement that expressly incorporated the General Conditions, Sungate agreed to the terms of the
General Conditions as though they were in fact attached. See id.; see also Polyclad Laminates, Inc. v. VITS Maschinenbau
GmbH, 749 F. Supp. 342, 345 (D. N.H. 1990) (holding plaintiff bound by arbitration clause in referenced document that
plaintiff had not seen). 

 Moreover, Sungate's protests that Garcia was fraudulently induced or coerced by Peterson's statement that "he did not want
to delay the construction and that Mr. Garcia could 'go ahead and sign the contract'" does not survive inspection of the
"Date of Commencement" clause. The Owner/Contractor Agreement provided that the commencement date of the project
was not the date of the Owner Contractor Agreement but, rather, the date of a later "Notice to Proceed signed by both the
Owner and Contractor." Sungate presented no evidence that Peterson prevented it from obtaining a copy of the General
Conditions after execution of the Owner/Contractor Agreement but before execution of the "Notice to Proceed." Nor did
Sungate present evidence that Peterson prevented it from amending the Owner/Contractor Agreement to eliminate any
arbitration clause before signing a "Notice to Proceed" and before permitting Peterson to commence work under the
contract. See Gilliam, 141 F. Supp. 2d at 737-38. In fact, no "Notice to Proceed" appears in the record. I would find that
the trial court reasonably could have reached only one decision. See Walker, 827 S.W.2d at 840. I would hold that Sungate
did not meet its burden of proving fraud in the inducement of the arbitration agreement as grounds for revoking it. See In
re Oakwood Mobile Homes, 987 S.W.2d at 573. 

B. The Scope of the Arbitration Clause


1. Arbitrability of Questions Regarding 


Conditions Precedent, Waiver, and Estoppel




 To avoid operation of the arbitration clause, Sungate also argues that Peterson did not submit its complaints first to the
architect, as required by the express terms of the arbitration clause itself, and otherwise waived or is estopped from
compelling arbitration. However, questions of procedural arbitrability, such as satisfaction of conditions precedent, are to
be determined by the arbitrator, not the trial court. In re Gardner Zemke Co., 978 S.W.2d 624, 626-27 (Tex. App.-El Paso
1998, orig. proceeding). 

 The arbitration clause at issue here is extremely broad, providing for arbitration of "[a]ny Claim arising out of or related to
the Contract." Similarly, "Claim" is defined in the General Conditions as "disputes and matters in question between the
Owner and Contractor arising out of or relating to the Contract." Construction of this contract language itself is subject to
the presumptions favoring arbitration created both by public policy and by the arbitration agreement's expansive language. 
Int'l Dairy Queen, Inc., 2 F. Supp. 2d at 477 (citing Moses H. Cone, 460 U.S. at 24-25). I cannot say "with positive
assurance that the arbitration clause is not susceptible of an interpretation" that covers the procedural arbitrability question. 
Warrior & Gulf Navigation, 363 U.S. at 582-83.

 Further, public policy favoring arbitration as well as the broad language in the arbitration clause itself both operate to
create a presumption that the parties intended to include the procedural arbitrability question within the scope of their
agreement. See First Options, 514 U.S. at 944; see also AT&T Techs., 475 U.S. at 650; Neal v. Hardee's Food Sys., Inc.,
918 F.2d 34, 38 (5th Cir. 1990) (holding that parties who included language "any and all disputes" in arbitration clause
intended clause to reach all aspects of their relationship); see also B.F. Goodrich Co. v. McCorkle, 865 S.W.2d 618, 620
(Tex. App.-Houston [14th Dist.] 1993, orig. proceeding) (op. on reh'g) (holding that parties who included language "any
dispute or disagreement between the parties" in arbitration clause intended clause to reach all aspects of their relationship). 

 Moreover, the arbitration clause itself expressly contains exceptions to its application in other circumstances not relevant
here, including express waivers. Whether conditions precedent have been met or whether a party has waived or is estopped
from compelling arbitration is not one of the enumerated exceptions to arbitration in the arbitration clause. Accordingly, I
would find that Peterson met its burden of establishing by clear and unmistakable evidence that Sungate agreed to arbitrate
the question of procedural arbitrability. First Options, 514 U.S. at 944. I would find that the trial court reasonably could
have reached only one decision. See Walker, 827 S.W.2d at 840. On this record, therefore, I would hold that the trial court
abused its discretion in denying Peterson's motion to abate and compel arbitration of the procedural arbitrability question. 

2. Arbitrability of Sungate's Claims on the Merits


a. Sungate's Claims against Peterson


 The Texas Supreme Court has held that claims of construction defects are included within an "all disputes between them"
arbitration clause. In re First Tex. Homes, Inc., No. 02-0876, Slip Op. at 2 (Tex. November 14, 2003) (per curiam). Thus, I
would find that Sungate has not met its burden to prove that the parties expressly excluded from arbitration Sungate's
construction defect claims against Peterson. See Int'l Dairy Queen, 2 F. Supp. 2d at 1477. I would find that the trial court
reasonably could have reached only one decision. See Walker, 827 S.W.2d at 840. I would hold that the trial court abused
its discretion in denying Peterson's motion to abate and compel arbitration of Sungate's construction defect claims on the
merits. See In re First Tex. Homes, Inc., No. 02-0876, Slip Op. at 2. 

b. Sungate's Claims against Cervis


 A party that is not a "party to the arbitration agreement may not enforce the agreement's provisions unless the
non-signatory falls into an exception, recognized under general equitable or contract law, that would allow such
enforcement." Mohamed v. Auto Nation USA Corp, 89 S.W.3d 830, 836 (Tex. App.-Houston [1st Dist.] 2002, orig.
proceeding). Principles of equitable estoppel allow a non-signatory to compel arbitration in two circumstances. In re
Hartigan, 107 S.W.3d 684, 691 (Tex. App.-San Antonio 2003, orig. proceeding, pet. denied) (citing Tex. Enters., Inc. v.
Arnold Oil Co., 59 S.W.3d 244, 249 (Tex. App.-San Antonio 2001, consolidated interlocutory appeal and orig.
proceeding)). First, "application of equitable estoppel is warranted when the signatory to the contract containing an
arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and
one or more signatories." Id. Second, "equitable estoppel may be applied if the nature of the underlying claims requires the
signatory to rely on the terms of the written agreement containing the arbitration provision in asserting its claims against the
non-signatory." Id. I would find that Sungate's claims against Cervis satisfy both conditions for non-signatory
enforceability of the arbitration clause. 

 Thus, I would find that Sungate did not meet its burden to prove that the parties expressly excluded from arbitration
Sungate's claims against subcontractors under Peterson's contract with Sungate. See Int'l Dairy Queen, 2 F. Supp. 2d at
1477. Construction of the contract language itself is subject to the presumptions favoring arbitration created both by public
policy and by the expansive language in the parties' arbitration agreement. Int'l Dairy Queen, Inc., 2 F. Supp. 2d at 477
(citing Moses H. Cone, 460 U.S. at 24-25). I would find that the trial court reasonably could have reached only one
decision. See Walker, 827 S.W.2d at 840. I would hold, on this record, that we cannot say "with positive assurance that the
arbitration clause is not susceptible of an interpretation that covers" Sungate's claims against Cervis. See Warrior & Gulf
Navigation, 363 U.S. at 582-83. "[O]nly the most forceful evidence of a purpose to exclude the claim from arbitration can
prevail." AT&T Techs., 475 U.S. at 650 (quoting Warrior & Gulf Navigation, 363 U.S. at 584-85). Sungate presented no
such evidence. 

VI. CONCLUSION


 I would conditionally grant Peterson and Cervis's petitions for mandamus and direct that the trial court: (1) vacate its order
denying their motions to abate and compel arbitration and granting Sungate's motion to stay arbitration; (2) issue an order
compelling arbitration of the procedural arbitrability questions; and (3) if the arbitrator decides the conditions-precedent,
waiver, and estoppel procedural questions in favor of arbitration, issue an order compelling arbitration of Sungate's claims
against Peterson and Cervis on the merits. 

 

 ERRLINDA CASTILLO

 Justice



Concurring and Dissenting Opinion delivered

and filed this 14th day of November, 2003.

1. 9 U.S.C. § 1-307 (2003). 

2. I note that Jose Garcia is listed in both petitions for writ of mandamus as a counsel of record for Sungate. 

3. Cervis's entitlement to arbitration is derivative of Peterson's.